Let's start over again. My name is Joseph Vaudenoye. I represent the appellate in this case. And you have it. Do you have a clock there? OK, just to make sure you do. The record here in this case shows that Mr. Gordon's performance was not affected by an alleged conflict of interest. First of all, he fought like a tiger. In fact, the trial judge, who was no fan, obviously, of Mr. Gordon's, said they put on an aggressive defense. And I would say to the court that there is no manifest necessity in this case. Under Illinois v. Somerville, the standard of manifest necessity exists only if the legal problem would make a reversal on appeal of certainty. And under Mickens v. Taylor, only an actual conflict of interest that adversely affected counsel's performance would result in a reversal on appeal. What do we do? I mean, it seems to me that where you have a lawyer that has represented the witness in the very same drug transaction and then is representing the defendant, has a per se conflict. And let's say mythically that he didn't have a conflict. He refused to talk to the judge to explain what his role was. So it seemed to me the judge really had no choice. Well, let me address that. All right. Number one, of course, in my opinion, the judge did have a choice. This was at the end of the trial. Secondly, before she had engaged in the colloquy with the with the defense counsel, two things had happened. Number one, assuming for the sake of argument that there was a conflict, she had obviated that conflict by striking Mr. Hevey's testimony. Second, she also appointed a lawyer for the witness. That's correct. Here's what bothers me now. At the time the mistrial was granted, the witness had a lawyer. The witness came up and said, I'm taking the fifth. I will not implicate myself. And obviously what he was doing was implicating himself as the culprit rather than the defendant. Now, what I'm worried about now, there's been a mistrial. Let's just assume it's sustained. What will be different in the next trial than the existing trial? If it had gone on to an end? Anything? No, they wouldn't call. I mean, assuming that I'm the trial counsel for Mr. Elliott in the next trial, I would not call Mr. because because he would refuse to testify precisely. But the point being, remember, I want to know, in other words, what I'm what you're saying. And I want the U.S. attorney to think about this is that the next trial won't be any different than the last trial, except that the defendant now will have to go through a second trial time. Right. But that's your position. Yes. And the point is that, number one, she has struck heaven's testimony. So whatever the conflict was, was not gone. Number two. And most importantly, in my opinion, she had directed questions to the defendant, had bypassed Mr. Gordon and talked directly to the defendant and said to the defendant, you know, Mr. Gordon as your lawyer and went on for six pages explaining the perils of having Mr. Gordon as her as his attorney. And then after telling him that as Mr. Elliott, all the reasons why presumably you shouldn't use because Mr. Gordon, because he doesn't have 100 percent faith and ability and and whatever to represent Mr. Elliott correctly. She then asked specific questions. Yes and no questions. Do you want Mr. Having told you all these things and all these dangers of having Mr. Gordon, do you want Mr. Gordon as your lawyer? Yes. You want to finish the trial, which was at the end of the trial, by the way, not the beginning. All that was left was one brief witness and closing argument. Do you want to finish the trial? Yes. And do you want. Do you object to a mistrial? The answer is yes. And the question was asked, do you waive the concern about the conflict? And the answer is I don't waive anything. Because in essence, the defendant refused to take a position. My position is that there was no reason to ask Mr. Gordon or involve Mr. Gordon in any other questions. The defendant had just waived his conflict rights because. And then his lawyer, who he says should continue to represent him, says, we're not waiving anything. So now what does the judge do? Well, a judge. So in other words, I want my cake and eat it too. I'm not waiving anything. But the judge should have said, Mr. Gordon, I'm asking. I'll ask the defendant. You don't have to ask the defendant magic words. I mean, waive. She asked him, knowing all these things I'm telling you and why you shouldn't really have conflict. You should have a conflict free lawyer. He answered. I'm willing to give up the rights. I didn't use the word waive. I mean, it sort of reminds me of the Adams family where the daughter says to the father, pass the salt. And he says, what's the magic word? And she says, no. Can you say that once the witness had his testimony struck and had his own lawyer, that whatever conflict was between the defense counsel and the witness and there didn't seem. There was no conflict after the witness was discharged. Precisely because he fought like a tiger. I mean, this is this is the opposite. Let's take the opposite position. Suppose Mr. Heavier came to Mr. Gordon and said, you know, I can contradict completely their star witness. And he said, well, I just can't use you. I can't put you on because there's a conflict here and I'm not going to use you. That's actual prejudice to Mr. He did just the opposite. What he did in this case was put on heavier as a witness. And, you know, one last thing I want to say about Mr. Gordon, he seems to be clueless of what the law is. And the reason I say that is not to trash him. But when he was asked, why do you object to striking heavy as testimony? When, you know, it's you took the Fifth Amendment and you said because it's relevant and helpful. Anyone who does any kind of appellate practice would know that if you assert the Fifth Amendment in the middle of course, you're not going to be able to finish it. You're not going to be able to use. So I think that they were asking, in effect, not for a legal opinion. I might save your remaining time, save the remaining time. Yes. Thank you very much. Good morning. May it please the Court. Beverly Weiss on behalf of the United States. Good morning. Judge Wright, the reason there would be a difference and there still would be a conflict even after Mr. Hevia's testimony was stricken was because the record is very clear that Mr. Gordon represented Mr. Hevia way prior to the trial, prior to the time he took he gave testimony in this case. In fact, according to the record, Mr. Hevia on cross-examination testified. I know all that. All I'm saying is, and I'm wondering, I'm not deciding it, but this is the question I say. Once the witness has a new lawyer and the judge says your testimony is stricken, where is the conflict now between Mr. Gordon and his client? And they do it. They want the trial to proceed. The government didn't move for a mistrial. The defense didn't move for a mistrial, and the government suggested the judge should do a sua sponte, and granting a mistrial sua sponte is a very unusual situation, and the record has to be awful clear. Your Honor, here's a conflict, and that is that what were the steps that Mr. Gordon could have taken? You'll have to speak up a little more. There are many other possible steps and leads that Mr. Gordon could have taken when he had a client or a witness who essentially was involved in the very same drug transaction as his current client. What things did he or did not do in preparation for that? There were a number of things he could have done pretrial based on his client confidences that he got from this other witness, and that was one conflict. What did he do? No court could ever figure that out, and that's why the Holloway, Arkansas cases talk about when you have an actual conflict, which defendant even conceded at the hearing before Judge Moway on the motion to dismiss, the courts cannot be second-guessing and speculating as to what the defense attorney could have done, so they have to presume there was some kind of prejudice. My question is if he had a conflict, but in effect it's removed because now Mr. Hevia can't and won't testify, so he's kind of stuck with whatever he's got, why should there be a mistrial? Because you'll never now have the witness's testimony in this trial or the next trial. Again, it's because the court would have been subject to error that Mr. Gordon still had a conflict based on the fact he had all these confidences and information based on his representation of Mr. Hevia that he may not have followed. Now, Mr. Lowenthal, who was associate counsel, filed the motion to withdraw, and in that he said he felt that there were some investigative leads that should have been or could have been followed up on and that that was in essence impaired Mr. Elliott's representation. You're saying that the only conflict was not simply the testimony, but the mere fact of representation. Correct, Your Honor, because he was privy to information about what Mr. Hevia's role was in the conspiracy. You have no record of that at all. All you have is the record we have before us. And on that record, can you tell me, with the witness now out, if you win this appeal and the case is retried, what difference would it make, and is Gordon disqualified, to represent this fellow? Well, Mr. Hevia is not going to take the stand. Mr. Hevia. We know that. And Mr. Gordon's not going to represent Mr. Elliott. And that was the only testimony which impaired or impeached the co-defendant, the main co-defendant, John Meston's testimony, because the essence of that witness's testimony and the argument that the defense was trying to make that it was Mr. Meston's main deal, that he's a liar, and Mr. Elliott had nothing to do with this case. Mr. Elliott had nothing to do with the parcel. It was all Mr. Meston's parcel, and therefore, Mr. Elliott is innocent. You can't say you were bound to get a conviction. The defendant had not testified. The jury might have believed him. And what happens is that the defendant goes through a partial trial, and now he's got to go through another trial. I don't know if he's got appointed counsel or he's paid his counsel, but that's the penalty of having the double jeopardy provision. Your Honor, the judge was whipsawed. She was going to be subject to error no matter which way she ruled, and she erred on the side of protecting the defendant's Sixth Amendment rights. Well, you can't say, listen, I've been on the appeals court a long, long time, and we are very reluctant to reverse district court judges. We are in this case. But to say that she would err in leaving the case to one is just not fair. Yeah, I think this case is very akin to the Thomas case, which the Ninth Circuit had cited, where in that case the defense counsel represented not only the criminal defendant who was charged with battery and assault on his ex-wife, but that defendant had represented the wife in a dissolution proceeding. And in the course of that proceeding had information relating to whether her marriage initially was even valid or not. And there was a bigamy motive. Now, at the trial of the defendant, when that conflict was raised, he agreed to abandon the bigamy motive. And the court said, hey, that's actual – that's prejudice to the defendant. That's an actual conflict. You can't have an attorney with one hand tied behind his back and representing the client. The husband has a right to have vigorous representation no matter which way. Here, Mr. Gordon may have been constrained in asking certain questions of the witness. Did the defendant himself object to the mistrial? You mean he personally make a statement? Yes. I don't recall that he did. Your Honor, I think when the judge tried to ask questions of the defendant, Mr. Gordon stepped in and said, Your Honor, I object to your even questioning this defendant. But he – but then Mr. Gordon did object to the mistrial, correct? Yes, he did. I think the arguments, however, are that he weighed the certain arguments that he's making because the judge pointedly asked those two questions with respect to whether the striking of the testimony made a difference, and secondly, whether the fact that Mr. Gordon – I can't remember now, but the fact that striking of the testimony would have made a difference and whether because the testimony was favorable, that was also something that would have made a difference. He pointedly asked Mr. Gordon, well, what about these factors? Address them for me. Mr. Gordon refused to do so, but these are the very arguments that they're raising here in this case. Well, I guess we would have to assume that taking the standard mantra that the instruction to the jury to disregard his testimony, that they would follow that instruction, correct? Correct. So basically the trial at that juncture would be the same trial you'd have on retrial. I would agree with that, Your Honor. Okay. Do you have anything further you wanted to comment on? Your Honor, I think the court really was in a hard position. I think she erred on the side of protecting Mr. Elliott's Fifth Amendment rights. I have no doubt that if the case had proceeded to trial and there was a conviction that the defendant would be making the very same arguments that I'm making here. It sounds to me like the court was trying to protect itself more than the defendant. I would disagree with that, Your Honor. Pardon me? I would disagree with that, Your Honor. Well, that's, you know, you've said the court was concerned about the defendant's rights. But the argument is, hey, if you get convicted, you're going to put me on the hot seat because I'll probably err and the Ninth Circuit will reverse me. But that's the standard upon whether there is manifest necessity, if reversal is a certainty. And that's precisely what she found. She found actual conflict, which the defendant has now even admitted. And in the face of actual conflict, prejudice is presumed. And that would have resulted in a reversal of any conviction. So I think the court was stuck. She was whipsawed and she took the only right position she could have at that point. Thank you. Please, the court. In my reply, in answer to the judge's question, on page two and three of my reply brief, here's the following colloquy. Okay. This is a discussion between the court and Mr. Elliott. Then first let me ask you, having consulted with Mr. Gordon, having consulted separately with Mr. Lowenthal, who is definitely not a fan of Mr. Gordon, and I think who acted outrageously. Of course, I'm not from Hawaii. I won't go into that. But anyway, do you wish to proceed with this trial? Answer, yes. There's no equivocation. There's nothing equivocal about that answer. Next question. There's no motion. It would be my declaration of a mistrial if I were to so decide. I'm not there yet. Okay. But I have some further questions. So, Mr. Elliott, you want to go forward with the trial. Is that right? Yes, Your Honor. Okay. So let me understand this. You're insisting on keeping Mr. Gordon and Mr. Lowenthal, and you're objecting to a mistrial? Yes, Your Honor. There is nothing equivocal about what he said. I like the part that you left out, the part that said, well, what about the conflict problem? And the position taken by defendant was what? The position taken by defendant counsel was on behalf of the defendant. The counsel who defendant insisted upon keeping. Yes. And defendant didn't object to him taking the position. I'm not waiving any rights. I've got a built-in conflict, so I've got a good appeal later if this trial doesn't go well. And he wouldn't walk away from that position, would he? He didn't walk away from his counsel, but I'm suggesting that the counsel was asking questions, was being asked for a legal opinion about whether there's a waiver. No, no, no. He was being asked if his client waived his right. That's not a legal opinion. That's factual. Client. Did you waive your rights? And what was his answer? His answer was that I'm not waiving anything. I'm not waiving anything. But the bottom line was the client. Had your cake and eat it too? No, the client had just finished waiving his rights. Where? Because he said he has been remembered. There was five pages in the transcript of the judge explaining why there is a conflict. Let's stop at that juncture and ask, what do you do if you say, well, I think the defendant without counsel waived a right, but he is represented by counsel and the counsel makes quite clear he's waiving no rights? So either you're in an equipoise or you take one or the other, what would be the authority for saying, well, we'll ignore the counsel, but we'll take the, quote, unrepresented defendant's concession? Well, he wasn't unrepresented. He consulted. So he was represented by counsel. Well, but he consulted with Mr. Lowenthal. He consulted with Mr. Gordon and wanted to continue on with them. The Thomas case is distinguishable on the ground. Well, I think maybe you're missing my point. The point is, if you're saying that Mr. Elliott is represented and his counsel refuses and says specifically we do not waive any rights, isn't that where we come out in the end? No. What we do with it is another question, but the fact is he didn't waive any rights. There's no question about what he said. But the bottom line was this was his trial tactics. I don't think I don't have an agree with a trial tactic of not assisting the court, objecting to everything. But the fact that he would object to striking the heaviest testimony demonstrates he really didn't know what the law was. And, in effect, I'm saying that after having a waiver from the defendant without the words because the judge didn't ask, do you waive, when she was getting straight answers from Mr. Elliott, there's no question that she wasn't getting equivocal lawyer answers on waiving. I think we have your point well in line. Thank you very much. I appreciate counsel's argument. And the case of United States v. Elliott is submitted.
judges: Bright, McKeown, Clifton